# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**CHRISTOPHER A. THORNSBERRY**  **PLAINTIFF**
**ADC #169180**

**v.**                **No: 2:21-cv-00169 LPR-PSH**

**CARRIE GRANVILLE,** *et al.*                **DEFENDANTS**

## ORDER

Plaintiff Christopher A. Thornsberry, an Arkansas Division of Correction (ADC) inmate, filed this 42 U.S.C. § 1983 action on December 17, 2021 (Doc. No. 2). Thornsberry subsequently filed an Amended Complaint (Doc. No. 4) and a Second Amended Complaint (Doc. No. 48). Some of Thornsberry's claims have been dismissed for failure to state a claim upon which relief may be granted or for failure to exhaust available administrative remedies. *See* Doc. Nos. 27, 77 & 113. The following claims remain: Eighth Amendment failure-to-protect and pendent state law negligence claims against defendants Indigol Counslor[1] and Jerrell Streeter in their individual capacities. *Id.* Streeter has filed an answer in this case. *See* Doc. No. 109. Counslor is in default. *See* Doc. No. 104.

---

[1] The Clerk of Court is directed to correct the spelling of defendant Counslor's name on the docket sheet for this case, in accordance with her proposed answer (Doc. No. 152-2).

Before the Court is Counslor's motion to set aside entry of default and brief-in-support (Doc. Nos. 152-153). Thornsberry filed a response and brief-in-support objecting to Counslor's motion (Doc. Nos. 154-155). For the reasons described herein, the Court GRANTS Counslor's motion.[2]

## I. Procedural Background

Thornsberry filed this case on December 17, 2021 (Doc. No. 2); he filed an Amended Complaint on January 7, 2022 (Doc. No. 4) and a Second Amended Complaint on November 14, 2022 (Doc. No. 48). The nature of his allegations are the same in each complaint. With respect to Counslor, he alleges that she was the officer in charge of the control booth on October 13, 2021, when he was escorted to and from a shower in another barracks by Sergeant Carrie Granville and Corporal Jarrell Streeter.[3] Doc. No. 4 at 4-5, 7; Doc. No. 48 at 5-6, 9. He states that after he

---

[2] Counslor's motion is a pre-trial matter referred to the undersigned pursuant to 28 U.S.C. § 636(B)(1)(A). Objections to this Order may be filed within 14 days. Fed. R. Civ. P. 72(a).

[3] Thornsberry's complaint allegations are not a model of clarity. However, he implies that Counslor and the other officers knew the other inmate was in his cell, allowing him to be attacked when the door was opened. Thornsberry attached a grievance to his original complaint describing the incident that provides additional detail:

> On 10-13-21 I was brought back to my cell in Max 1-46 from shower and when my cell door was open to put me back in my cell between 9:20 pm and 9:40 pm an inmate that is housed in Max 1-44 cell came out of my cell, Max 1-46 and physically assaulted me while I was in handcuffs. The video camera will show that I was beat up in cuffs and will show that the inmate stole a bunch of my personal property too. My face is swollen and he broke my tooth. I am hurting, was not given medical treatment yet. Officer Stringer is

showered and was being escorted back to his cell block by Granville and Streeter, they called the control booth, telling Counslor to open his cell door. *Id.* According to Thornsberry, when his cell door was opened, an inmate ran from the cell and attacked him, striking him numerous times with a closed fist and causing multiple injuries.[4] *Id.* He later noticed that some of his personal property was missing.[5] Thornsberry further alleged that

> . . . any time that an inmate is moved around there are proper procedures which is to be followed, staff are to check the inmate roster before placing inmates in cells or opening doors, and none of the listed defendants followed this procedure, because if they had the attacker would not have been placed in my solitary confinement cell to steal my property and harm me.

Doc. No. 48 at 9. *See also* Doc. No. 4 at 7 (same allegation).

The Court ordered the United States Marshal to serve Thornsberry's Amended Complaint on defendants Counslor, Granville, Streeter, and Corporal Morris (originally named as John Doe). Doc. Nos. 7 & 26. Summonses for the named

---

the one who place inmate Bobby Cumach in my cell and Officer Counsel is the officer controlling the doors that open my cell for him. I want to file criminal charges.

Doc. No. 2 at 15 (grievance EAM21-02030).

[4] Thornsberry mentioned inmate Brian Spicer in his Second Amended Complaint, but does not say he is the inmate that attacked him. In grievance EAM21-02030, he described the attacker as inmate Bobby Cumach. Doc. No. 2 at 15. And in his discovery requests, the inmate is identified as Bobby Camacho. Doc. No. 132-1.

[5] Thornsberry's claims relating to his personal property have been dismissed. *See* Doc. No. 27.

defendants were sent to the ADC Compliance Division. *Id.* Summonses for Counslor and Streeter were returned unexecuted with a notation that they no longer worked there. Doc. Nos. 19-20.

Counslor and Streeter were served on May 19, 2022, at their last known private addresses, according to summonses returned executed. *See* Doc. Nos. 32-33. The summons returned for Counslor included a green card signed by her. Doc. No. 32 at 2 (signature card filed under seal). The signature on the green card returned with Streeter's summons was not legible. Doc. No. 33 at 2 (signature card filed under seal). Accordingly, the Court directed Streeter to respond and show cause why he should not be held in default. *See* Doc. No. 51. Streeter filed a letter stating that he received a copy of the lawsuit, that he stood by the report he had made at the time of the incident, and that he had "signed and gave the information asked of me months ago in the letter I received in the mail . . .". Doc. No. 59. This letter was initially docketed as Streeter's answer, but due to its lack of clarity, the Court ordered Streeter to further explain why he failed to answer. *See* Doc. No. 103. In response, Streeter filed a letter denying the allegations against him which has been docketed as his answer. *See* Doc. No. 109.

On December 13, 2022, the Court entered an order noting that Counslor had apparently been served but had not filed an answer or other responsive pleading. Doc. No. 50. The Court ordered Counslor to show cause why she should not be

placed in default and ordered the United States Marshal to personally serve the order on her at her last known private address. *Id.* She was personally served with the Order to Show Cause on December 29, 2022, *see* Doc. No. 64, but did not respond or enter an appearance in this case. Accordingly, on July 31, 2023, the Court referred her failure to respond to the Clerk of the Court for consideration of an entry of a Clerk's default. *See* Doc. No. 102. Default was entered as to Counslor on August 1, 2023. Doc. No. 104.

Meanwhile, the case proceeded against Granville and Morris, who were represented by counsel with the Arkansas Attorney General's Office. Thornsberry's claims against them were dismissed without prejudice on September 1, 2023. *See* Doc. No. 113. The Court subsequently set discovery and dispositive motion deadlines as to Thornsberry's remaining claims. *See* Doc. Nos. 115-116. Thornsberry attempted to serve discovery on Streeter and Counslor, which proved difficult because their addresses were filed under seal.[6] *See* Doc. Nos. 111-112. Thornsberry's request for counsel was subsequently granted, and William Griffin was appointed to represent him in this case. *See* Doc. Nos. 119-120.

Griffin proceeded to conduct discovery on Thornsberry's behalf. On March 28, 2024, the Court entered an Order granting Thornsberry's motion to deem certain

---

[6] It is the Court's policy to maintain the private addresses of defendants in prisoner cases under seal.

requests for admissions admitted as to Counslor. Doc. No. 134. On April 2, 2024, Thornsberry moved for summary judgment based on those admissions. Doc. Nos. 135-137. On April 26, 2024, Counslor filed a response to the motion for summary judgment, stating that she had changed addresses and not received any interrogatories in this case. Doc. No. 138. She also denied Thornsberry's claims and all liability. *Id.* This was Counslor's first time to file anything in this case. Because the return address on the envelope containing her response was a new address not previously known to the Court, the Court directed the Clerk of Court to send Counslor new copies of various pleadings and documents and set a show cause hearing for Counslor to appear and explain what she had received and why she had not previously defended Thornsberry's allegations in this case. Doc. No. 139.

## II. September 9, 2024 Hearing

Counslor was present and testified at the show cause hearing on September 9, 2024. Counslor acknowledged that she signed the green card when she received the summons and complaint, and stated she did not realize she had to respond to anything. Doc. No. 156, *Transcript* ("Tr."), at 4:2-12. She also remembered an officer coming to her house and delivering some papers, but said she did not know she had to go to court because of them. Tr. at 5:1-14. Counslor testified she did not receive the entry of default entered on August 1, 2023, which was sent to her address in Lyon, Mississippi, because she no longer lived there. Tr. at 5:18-25, 6:1-7, 7:3-

8. She explained that she moved to Olive Branch, Mississippi, in February 2023. Tr. at 6:8-18. Counslor testified that she did not retrieve mail sent to her previous address after she moved, even though her father continued to live at that address and she visited him and spoke to him regularly. Tr. at 13:9-25–15:2. She said she was not expecting any mail, and they never spoke about the mail. Tr. at 16:1-5, 15-25, 17:1-10, 18:21-25, 32:11-13.

Counslor called Thornsberry's counsel Griffin on April 2, 2024, after receiving some mail at her new address. Tr. at 17:11-14, 21-22. She believed she was calling the Court but reached him instead. Tr. at 28:5-9. She also testified she believed she called and spoke to someone at the Court at some earlier time who told her to write a letter informing the Court that she had moved. Tr. at 28:14-24. After her call to Griffin, he sent her the motion for summary judgment with the discovery requests attached, and she filed her response with the Court. Tr. at 7:20-23, 33:15-23. When asked why she did not file a response in the case sooner, Counslor stated, "I really had other things going on. I didn't know it was, you know, this hearing. I just thought maybe since I was an officer on duty, then I – I don't know." Tr. at 8:12-18. She also testified that she had sent a letter or faxed it to someone stating that she requested counsel – she believed she sent it to the Court. Tr. at 11:13-17, 12:5-10. Counslor explained she did not know why the ADC did not provide representation, and said, "I really thought they were. I thought this was – that's what

the letter that I just faxed off to them was about. I thought that was – you know, they were representing me then." Tr. at 12:19-24. She also testified,

> I didn't know it was something I had to answer to; that's why I called you, you know, reached out and sent the letter to the Court or whatever because I just wasn't aware of the fact. I mean, I didn't even know that I would have do all this. I was – I was just lost. I probably should have been contacting the prison, but yeah, I didn't know.

Tr. at 18:5-11. Counslor further testified that she was aware of the lawsuit but thought Thornsberry was suing the prison, not her personally. Tr. at 26:4-20. She again stated that she thought the ADC would defend her and they did not explain to her why they were not. Tr. at 26:21-25-26:1. Counslor stated that she spoke to Streeter about the lawsuit in both 2023 and more recently, and he advised her to reach out because "they were saying something about me not responding. So I was trying to figure out for a little while how to reach out." Tr. at 27:2-25.

Regarding the October 13, 2021 incident with Thornsberry, Counslor testified that she was in the control booth on the first floor during shower call, and she opened the door to a cell on an upper floor by remote means when told to by another officer. Tr. at 8:21-24, 9:11-14, 10:14-24. She said,

> So at that time, they were escorting Mr. Thornsberry, and when they got to the door, they told me to open the door. I opened the door, but I was watching up there as I was opening the door. It was another inmate in the cell, but he was obviously hiding, so we didn't know the inmate was in his cell. And once we opened the door, the inmate struck Mr. Thornsberry.

Tr. at 8:25-9:1-5. Counslor clarified that she could not see into the cell from the control booth, but could see the door. Tr. at 10:1-7. She testified she did not see an inmate in the cell pushing Thornsberry's personal property out, and claimed that she may have been facing the other way while that was happening. Tr. at 21:25-22:1-15. Counslor acknowledged that she must have let the wrong inmate into Thornsberry's cell at some point, and that she had been trained to check a photo roster before opening a door to make sure the correct inmate was going into the cell. Tr. at 23:3-15, 24:15-25, 25:1-10. Counslor also stated she was unaware of any threats to Thornsberry. Tr. at 10:8-9.

Following the September 9 hearing, the Court entered an order on September 13, 2024, giving Counslor 21 days to move to set aside her default and file a responsive pleading. *See* Doc. No. 150.

### III.     Counslor's Motion

On October 9, 2024, Assistant Attorney General Julius Gerard filed a notice of appearance on behalf of Counslor and moved to set aside the default entered against her (Doc. Nos. 151-153). In Counslor's brief supporting her motion to set aside default, Gerard explained that after service was issued in this case, he was asked to represent Granville and Morris who still worked for the ADC at that time. Doc. No. 153 at 1. He further explained that he was instructed to not represent Counslor or Streeter who no longer worked for the ADC. *Id.* However, the ADC's

compliance department sent Counslor a litigation form allowing her to choose whether or not she wanted to be represented by the Attorney General's Office. *Id.*; Doc. No. 153-1 (redacted version of form). She completed the form on June 10, 2022, checked the box for representation by the Attorney General's office, and presumably returned it to the ADC's compliance division, as instructed on the form. *Id.* ("This form must be completed and immediately returned to the Arkansas Board of Correction's Compliance Division."). Gerard explained that he did not enter an appearance for Counslor or Streeter because he was not asked to do so by the ADC. Doc. No. 153 at 1-2. Gerard explained that he suspected there may have been a misunderstanding when the Court entered its show cause order on December 13, 2022. He therefore mailed a letter to Counslor on April 24, 2023, informing her that "[a]fter [she] was served the ADC contacted [the Attorney General's office] stating [the Attorney General's office] would not be representing [her] in this matter … [a]ny further communication would be wisely conducted with the Court or appropriate legal counsel." Doc. No. 152-1 at 1-2. The letter also informed Counslor that the Court had issued a show cause order and that "[t]his is a serious matter that requires your attention." *Id.* The letter was sent to Counslor at an address in Lyon, Mississippi, and returned as undeliverable on May 2, 2023. *Id.* at 3.

Gerard further explained that the day before the Court's show cause hearing, Counslor came to the Attorney General's office and expressed confusion about her

representation. Doc. No. 153 at 2. Gerard informed her that the ADC had not asked the office to represent her, and she then contacted the ADC asking why she was not being represented. *Id.* According to Gerard, the compliance division reviewed and reversed their prior decision and emailed Gerard on October 8, 2024, requesting that the Attorney General's office represent Counslor in this matter. *Id.*

## IV. Analysis

The Court may set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c). In showing good cause to set aside an entry of default, the Eighth Circuit Court of Appeals states that a court should look at "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 784 (8th Cir. 1998). This "good cause" standard is more lenient on the defaulting party than the "excusable neglect" standard applied when a court considers setting aside a default judgment. *Id.* at 783. The Eighth Circuit has "frequently endorsed the strong judicial policy against default judgments" and has noted the "judicial preference for adjudication on the merits." *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993) (citing *Marshall v. Boyd,* 658 F.2d 552, 554 (8th Cir. 1981)). The Court examines each factor below.

Blameworthy or Culpable Conduct

In determining if a defaulting party's conduct is culpable or blameworthy, the Court follows the Eighth Circuit's decisions in distinguishing "between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines. We have rarely, if ever, excused the former." *Johnson,* 140 F.3d at 784. While Counslor's delay in responding to this lawsuit was indeed lengthy and not marginal, her testimony regarding her change in address, her confusion regarding the case, and her belief that the ADC would provide representation for her leads the Court to conclude that her conduct was not intentional, contumacious, or culpable, as further explained below.

First, the Court found Counslor credible but unknowledgeable about what was required of her as a *pro se* litigant. She readily admitted that she received the initial summons in the case and recalled an officer delivering some papers in person (the Court's order to show cause personally served by U.S. Marshals). She testified she did not know she needed to respond to anything at that time and did not understand she was being sued personally. Tr. at 4:12, 18:5-6. Counslor also testified that she attempted to contact the court about her change of address, but it is not clear who she called, when she called, or what directions she was given. Tr. at 28:14-25-29:1-4. And after speaking to Streeter, she said she knew she needed to "reach out" but did not know how. Tr. at 27:11-12. Counslor was proceeding *pro se* during this

time, and courts have routinely recognized that *pro se* litigants should be afforded some extra leeway. *See e.g., Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96-98 (2d Cir. 1993) ("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge."); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

Second, Counslor did not seem to understand she was a *pro se* litigant. Rather, she believed the ADC would provide representation for her; she recalled sending or faxing something requesting representation (she believed it had been sent to the Court, but according to the instructions, it would have been returned to the ADC's compliance office). Tr. at 11:13-17, 12:5-10. Her testimony is corroborated by the ADC form which was submitted by Gerard in support of the motion to set aside default. Doc. No. 153-1. It shows that she did complete the form and requested representation. Significantly, Streeter's initial response filed in this case indicates that he received the same form. *See* Doc. No. 59 ("I signed and gave the information asked of me months ago in the letter I received in the mail, sorry for the [inconvenience]."). And when Gerard sought to clear up any confusion caused by

the ADC form sent to Counslor by sending her a letter in April of 2023, informing her she had no representation, the letter was returned as undeliverable. Doc. No. 152-1. By that time, she had moved to Olive Branch.

Finally, while it is curious that Counslor never collected her mail from her prior address, since her father lived there and she continued to have contact with him, her explanation that she had no reason to expect any mail is believable. She explained that she received no bills in the mail, other than a cable bill, and she had canceled her cable before she moved. Tr. at 16-17.

Overall, the Court found Counslor's testimony credible and her confusion regarding this case sincere. Her conduct is therefore not blameworthy or culpable, and this factor weighs in favor of setting the default aside.

<u>Meritorious Defense</u>

The Court must also determine whether Counslor has a meritorious defense. "Whether a meritorious defense exists is determined by examining 'whether the proffered evidence would permit a finding for the defaulting party.'" *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) (quoting *Johnson,* 140 F.3d at 785). "'The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default.'" *Id.* (quoting (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d

808, 812 (4th Cir.1988) (per curiam)). *See also* § 2697 The Requirement of Showing a Meritorious Defense, 10A Fed. Prac. & Proc. Civ. § 2697 (4th ed.).

Thornsberry's remaining claims against Counslor are Eighth Amendment failure-to-protect and pendent state law negligence[7] claims based on Thornsberry's allegation that Counselor opened his single-man cell door on October 13, 2021, knowing there was another inmate inside who should not have been in the cell and who planned to attack him. To succeed on an Eighth Amendment failure-to-protect claim, a plaintiff must show that there was a substantial risk of serious harm to him and that defendants were deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008). Specifically,

> This claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). To establish a *prima facie*

---

[7] If Thornsberry's constitutional claims are denied, the Court may decline to exercise supplemental jurisdiction over his remaining state law negligence claims. *See ACLU v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir. 1999) ("[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity."). *See also Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) ("The judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.").

case of negligence under Arkansas law, "a plaintiff must prove that he sustained damages, that the defendant was negligent, and that such negligence was a proximate cause of the damages." *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 46 (1999). Negligence is defined as "the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances." *Id.* (citing *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998)).

At the September 9 hearing, Counslor was questioned about the October 13, 2021 incident. She testified that she did not know the wrong inmate had been allowed to enter Thornsberry's cell and was unaware of any threats made against Thornsberry. This is a meritorious defense to Thornsberry's Eighth Amendment Failure-to-Protect claim. If Counslor simply made a mistake, even a negligent mistake, it negates his claim that she opened his door with knowledge that another inmate was inside waiting to attack him. Counslor's meritorious defense as to Thornsberry's Eighth Amendment claim weighs in favor of setting aside default.

Prejudice

The Court next evaluates the prejudice to Thornsberry if Counslor's default is set aside. Setting aside the default "must prejudice plaintiff in a more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Johnson,* 140 F.3d at 785 (quoting *Berthelsen v. Kane,* 907

F.2d 617, 621 (6th Cir.1990)). Thornsberry argues discovery has been delayed for at last one year since Counslor's default was entered; he believes memories may have changed and documents lost. Doc. No. 155 at 4.

The Court acknowledges the length of the delay and the potential that Thornsberry may have suffered some prejudice due to that delay. However, in light of the litigation that has already taken place with respect to former defendants Granville and Morris (which took approximately two years), a few months' delay in obtaining discovery from Counslor is not a significant prejudice. Thornsberry's counsel obtained Counslor and Streeter's last known addresses in January of 2024. *See* Doc. No. 123. Counslor testified that she did not receive Thornsberry's requests for discovery until she received his motion for summary judgment in April 2024. At that time, she called his counsel and filed a response with the Court denying his allegations. *See* Tr. at 28:2-13; Doc. No. 138. Now that Counslor is represented by counsel, she should be able to respond to discovery requests in a timely manner. And given that the discovery deadline has already run with respect to defendant Streeter, the Court will set abbreviated discovery and dispositive motion deadlines as to Counslor.

### V. Conclusion

Given all the facts and circumstances of this matter, and the preference to adjudicate claims on the merits, the Court determines that good cause exists to

excuse Counslor's delay in filing a timely answer. The Court therefore grants Counslor's motion to set aside the Clerk's entry of default (Doc. No. 104). It is SET ASIDE and VACATED. The Clerk of Court is directed to docket Counslor's proposed answer (Doc. No. 152-2) in this case. Counslor has 14 days from the date of this Order to:

    a)    file a response to Thornsberry's pending motion for summary judgment (Doc. No. 135); and

    b)    to notify the Court whether she intends to pursue a defense that Thornsberry failed to exhaust his administrative remedies. If she intends to do so, the defense must be raised by motion for summary judgment no later than January 15, 2025.

IT IS SO ORDERED this 19th day of December, 2024.

_____
UNITED STATES MAGISTRATE JUDGE